IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

REED SAUNDERS, by and )
)
through his next friend and guardian, )
)
P.J. SAUNDERS, )
)
     Plaintiffs, )
)
v. )     Case No. 2:19-cv-02538
)
USD 353, the Wellington School District, )
)
and, )
)
ROBIN CREAMER, an individual, and )
)
TAMMY MOORE, an individual, and )
)
BRENDA GRAY, an individual, )
)
     Defendants. )

## SECOND AMENDED COMPLAINT

1.    Plaintiffs bring this suit to seek compensation and redress for harms they suffered as the result of torts committed by Defendants Robin Creamer, Tammy Moore and Brenda Gray while in the employment of Defendant USD 353, in violation of 42 U.S.C § 1983, the Fourth and Fourteenth Amendments, the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq., as well as Kansas common law claims asserted under the Kansas Tort Claims Act, K.S.A. § 75-6103.

2.    This court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §1331 and §1367.

Parties

3.     Plaintiff P.J. Saunders is the next friend and guardian of Reed Saunders.

4.     Plaintiff Reed Saunders incapacitated and suffers from severe mental retardation, a compromised spine, cerebral palsy, chronic lung disease, blindness, developmental disabilities and a seizure disorder.

5.     Plaintiff Reed Saunders cannot communicate verbally and can only use limited sign language. He requires complete support to perform the activities of daily living.

6.     Plaintiff Reed Saunders stands approximately five-feet tall and weighs approximately seventy-five pounds.

7.     Plaintiff Reed Saunders must use a walker to ambulate and a wheelchair to cover long distances, and with either mode of transportation, completely relies on the assistance of responsible caretakers.

8.     Defendant USD 353 (hereinafter "the District" or "USD 353") is a Kansas public school district based in Wellington, KS, and a recipient of federal funds. The District is considered a "municipality" under the Kansas Tort Claims Act, K.S.A. § 75-6102c.

9.      Defendant Robin Creamer is a Kansas resident and was a USD 353 employee at the times relevant to this lawsuit. Creamer is sued in her individual capacity. At all times relevant she was acting under the color of the law and within her scope of employment. She resides at: 815 N Woodlawn Street, Apt 118,

Wellington, KS 67152.

10.     Defendant Tammy Moore is a Kansas resident and was a USD 353 employee at times relevant to this lawsuit. Moore is sued in her individual capacity. At all times relevant she was acting under the color of the law and within her scope of employment. She resides at: 918 E Lincoln Avenue, Wellington, KS, 67152.

11.     Defendant Brenda Gray is a Kansas resident and is a USD 353 employee at times relevant to this lawsuit. Moore is sued in her individual capacity. At all times relevant she was acting under the color of the law and within her scope of employment. She resides at: 1217 N A Street, Wellington, KS 67152.

<u>Background allegations</u>

12.     Plaintiff Reed Saunders possessed a property interest in his public education at the District.

13.     Plaintiff Reed Saunders possessed the right under the Fourth and Fourteenth Amendments to be free from wrongful seizure and to substantive due process rights of bodily integrity.

14.     Plaintiff Reed Saunders has serious medical conditions that are disabilities as defined by the Rehabilitation Act of 1973, in that each of these conditions were physical or mental impairments that substantially limit Plaintiff in all major life activities, including eating, communicating, mobility, dressing, using the bathroom and thinking.

15.     Plaintiff is a disabled person within the meaning of the Rehabilitation Act and is a qualified person with a disability, in that, at all pertinent times, Plaintiff

had physical or mental impairment that limit one or more major life activities, and that he was capable of performing the essential functions of his particular school programs with reasonable accommodation.

16.   At all pertinent times, Defendants were aware of Plaintiff's disabilities and their effect on Plaintiff Reed Saunders.

17.   At all pertinent times, Defendants were aware that Plaintiff had requested accommodations for his disabilities.

18.   At all pertinent times, the District possessed a mandatory policy regarding emergency safety interventions, seclusion, mechanical restraint, physical restraint and physical escort, which states:

a.   The superintendent "shall ensure that all district personnel are trained annually with information about this policy."

b.   The superintendent "shall ensure that designated district personnel are trained and know the procedures involving the use of seclusion and restraint…"

c.   Each school building maintains documentation regarding such training and a list of participants.

d.   The principal "shall provide written notification to the student's parents any time that [an emergency safety intervention] is used with a student. Such notification must be provided within two (2) school days."

e.   Each building "shall maintain documentation any time ESI is used with a student" and such document "must include" the date and time of the intervention,

the type of intervention, the length of time of the intervention and the school personnel "who participated in or supervised the intervention."

  f. The principal "shall be responsible for providing copies of such documentation to the superintendent on a least a biannual basis."

  g. "At least once per school year, each building principal or designee shall review the documentation of ESI incidents with appropriate staff members to consider the appropriateness of the use of ESI in those instances."

  19. The district also maintains a policy stating that classified employees "shall be evaluated twice during their first year of employment and at least once a year during subsequent years" and that evaluation documents "will be on file with the clerk of the board." The same policy requires that classified employees be evaluated "by the supervisor to whom they are assigned."

  20. On or about January 18, 2019, Reed was a USD 353 student.

  21. On that date, Reed attended a basketball game sponsored by USD 353.

  22. Three USD 353 employees had undertaken the care and custody of Reed at that time – teacher Brenda Gray and two para-educators under her direct supervision, Defendants Creamer and Moore, both "classified" employees.

  23. During the game, Creamer repeatedly applied physical restraints and physical escort to Reed in excess of what was reasonably necessary, including pinning his arms, striking and shouting at the boy.

  24. Creamer's actions exhibited recklessness and deliberate indifference to Reed's bodily integrity and legal rights.

25.   Creamer's actions at all times were under the supervision of USD 353 supervisor Brenda Gray.

26.   USD 353 possessed actual knowledge that Brenda Gray was not suitable for supervisory tasks and had not been properly supervising para-educators working under her supervision and with Plaintiff Reed Saunders.

27.   In approximately October of 2015, Plaintiff P.J. Saunders reported to USD 353 administration that Brenda Gray had been pouring cold water on Plaintiff Reed Saunders' genitalia.

28.   In approximately October of 2015, Plaintiff P.J. Saunders reported to USD 353 administration that a para-educator under Brenda Gray's supervision had been using martial-arts style pressure points to control Plaintiff Reed Saunders' behavior with pain.

29.   In 2015, USD 353 administration also received notice from outside agencies of Brenda Gray's para-educator's use of pressure-point tactics.

30.   In approximately October of 2015, Plaintiff P.J. Saunders reported to USD 353 administration that Brenda Gray had not been maintaining safe classrooms for Plaintiff Reed Saunders and other students due to her demonstrated inability to supervise para-educators and children.

31.   Prior to January of 2019, USD 353 administrators had also received reports from other USD 353 employees that Brenda Gray had trained her para-educators to bite or sit on children under their supervision.

32.   Following the January 2019 basketball game, Plaintiff Reed Saunders

suffered setbacks in his development and an exacerbation of his medical challenges; he lost weight and he regressed in language and social development.

33.    Plaintiffs suffered significant out-of-pocket costs in attempting to place Plaintiff Reed Saunders in a different school district.

34.    Plaintiff Reed Saunders suffered perceptible anguish and distress while experiencing Defendant Creamer's restraints; he continues to exhibit great emotional distress at the sound of Creamer's voice or when present in environments similar to the basketball game where Creamer restrained him.

35.    As a direct result of Defendants' conduct, Plaintiffs have suffered past, present and future emotional distress, sadness, and anger; they have suffered past and future medical expenses; they have suffered past and future economic losses; and they have incurred significant out-of-pocket expenses

36.    All of the Defendants' conduct was at least grossly negligent and therefore the Paul D. Coverdell Teacher Protection Act of 2001, 20 U.S.C § 6731 (2012) does not apply.

## ADDITIONAL BACKGROUND ALLEGATIONS

37.    Plaintiff P.J. Saunders on multiple occasions in 2018 told USD 353 supervisors that Defendant Creamer and Moore should not be dragging Reed Saunders along by his walker, as such conduct, besides being offensive, could damage his delicate, surgically repaired spine.

38.    Defendants Creamer and Moore, in full view and with full authorization, approval and encouragement from Defendant Gray, continued to

drag Reed along by his walker.

39.     Prior to dragging Reed into the bathroom by his walker the day of the basketball game, Plaintiff P.J. Saunders had reported similar conduct to their supervisor and informed the Defendant School District that this conduct could damage Reed's surgically repaired spine; all Defendants, including Creamer and Moore, knew that dragging him by the walker could physically injure him.

40.     Plaintiff Reed Saunders suffers from severe mental retardation, scoring below the first percentile in IQ, and has been estimated to function at age range of 1 to 3 years old.

41.     At the time of his basketball game, he was still under doctor's care for a back surgery.

42.     When Defendant Creamer held down Reed Saunders' arms, which served as his only way of communicating, and forced him into a bathroom, she completely limited the Plaintiff's freedom of movement greatly in excess of every-day, compulsory attendance.

43.     Creamer's conduct exceeded any reasonable definition of normal and inherent every-day discipline received in a school setting, as striking a helpless student, restraining his only way of communicating with the outside world, and then forcing him into a bathroom shocks the conscience and would not be tolerated anywhere in any setting.

44.     Because Reed is blind, suffers from cerebral palsy and other developmental disabilities, and therefore is totally and completely dependent upon

his custodian for mobility, communication and activities of daily life, he was entirely prevented from leaving the control of Defendants Creamer and Moore, the very people charged with his care.

45.     Defendants Creamer and Moore physically restrained Saunders repeatedly over the course of more than an hour, with the restraints lasting minutes, but occurring repeatedly during that time.

46.     Defendants Creamer and Moore restrained Reed by using their hands to press his arms down, by dragging his walker and by secluding him in a bathroom.

47.     Defendant Gray acquiesced, encouraged and condoned the behaviors of Creamer and Moore, as their conduct occurred in full view of Defendant Gray, and Defendant Gray approved of it.

48.     Plaintiff Saunders did nothing to warrant or provoke any physical restraint or beating by Creamer – nor could he, being entirely helpless in his wheelchair.

49.     Defendants Creamer and Moore have no cause or justification possible for punishing or restraining Reed, because he is not capable of "bad behavior" and would not have understood Creamer or Moore's conduct as "punishment," or understand why the punishment was occurring.

50.     Education professionals from other schools in attendance at the game who observed Creamer's conduct moved to intervene to stop her conduct; they described Creamer's action as "battery at best."

51.     A teacher, A.L., from a different high school who had previously worked

9

with Reed, was in attendance at the basketball game and witnessed Creamer strike Reed's arms and yell at him and shout at him: "You know you don't want to make me mad!"

52.     Creamer's words were a threat of additional physical violence, suggesting that she had previously inflicted physical violence on Reed.

53.     Teacher A.L. intervened at that point, and went to soothe Reed, who was distraught in his wheelchair.

54.     As Teacher A.L. soothed Reed, Defendant Creamer again aggressively pushed Reed's hand down and shouted at him.

55.     Defendant Creamer's conduct occurred in full view of the gymnasium, including her USD 353 supervisor, Defendant Gray.

56.     Teacher A.L. subsequently sent an email to the Defendant School District, documenting what she observed and stating:

> … the staff does not realize their behaviors are unacceptable. This is not the way students with these severe of need or any student should be treated. I did not have these problems with Reed when I had him. Even if he is being aggressive he is not able to physically go after people so they could just get out of his way or get behind him.

57.     After Teacher A.L. intervened, Defendants Creamer and Moore together held both of Reed's arms down, then transferred him to his walker from his wheelchair, and then both Creamer and Moore together drug Reed into a bathroom by the walker, an action they knew could hurt him.

58.     Defendant Creamer's conduct was reported as child abuse; she was criminally investigated and charged with battery.

59.     On August 23, 2019, Defendant Creamer plead guilty in Sedgwick County to a Class B Misdemeanor charge of Battery stemming from her conduct with Reed and was placed on probation.

60.     When Defendant Creamer struck Reed, she caused him immediate physical injury and physical pain.

61.     Defendant Creamer struck Reed in an angry manner and with malicious intent.

62.     Reed felt horror while he was being restrained by Defendants Creamer and Moore and was unable to move at all, or communicate, or comprehend what why it was happening.

63.     Following Creamer's conduct, Reed Saunders' behavioral issues worsened for him – he increased banging his head and self-biting behaviors, and he began refusing food at school.

64.     Plaintiff Reed Saunders education plan included no recommendation that his teachers strike him, pin his arms, drag him into a bathroom, seclude him a bathroom, shout at him or threaten him with violence.

65.     Other School District students with developmental disabilities and physical limitations, who were also under the supervision of Defendants Creamer and Moore and/or Gray, who were present at the same basketball game, and who similarly had not engaged in and/or were not capable of any conduct that would warrant a "punishment," and who were materially similar to Reed in all other respects, were

not struck, threatened, shouted at, and did not have their arms pinned, and were not dragged into a bathroom.

66.     Defendants Creamer and Moore and Gray each owed Reed a duty to intervene when they witnessed his Constitutional rights being violated while he was in their custody.

67.     Similarly, Defendants Creamer and Moore and Gray each owed Reed an independent duty to supervise him and keep him safe from harm caused by their fellow employees while Reed was under their supervision.

68.     Defendant Gray affirmatively made matters worse for Reed by placing him into the custody and control of Creamer and Moore, knowing there was a substantial risk of Reed being physically harmed, threatened and restrained.

69.     Defendants Creamer and Moore and Gray each had an opportunity and the means to intervene and help him.

70.     But while members of the public sought to intervene and help Reed, the people whose job and duty it was to help and care for Reed – Defendants Creamer, Moore and Gray – either took no action or affirmatively joined in the Constitutional deprivation.

71.     As a pleading in the alternative, if Defendants Creamer or Moore were not operating within their scope of employment, those employees of the Defendant School District who were operating within their scope of employment possessed a duty to intervene to keep Reed safe from either Creamer or Moore's private actions as third parties.

72.     On or about August 25, 2017, Plaintiff Reed Saunders had been under Defendant Gray's supervision, and the supervision of her subordinates, when he sustained unexplained bruising that could not have been self-inflicted give the bruising location and the limited movements that Plaintiff Reed Saunders is capable of.

73.     The paraeducator who used military style pressure points on Reed, and who was instructing other employees on how to do the same, was named Tina Catlett, and these military style pressure points were used on Reed in 2015, including in September of 2015.

74.     The military style pressure points tactics cause appreciable and immediate pain upon Reed Saunders, and therefore was an inhumane method used by the school district's employees, and condoned, endorsed, approved and promoted by Defendant Gray, who was the supervisor of Catlett.

75.     On or about August 25, 2017, Plaintiff Reed Saunders was discovered to have sustained unexplained bruising in a location on his body where it could not be self-inflicted, and sustained while he was under the supervision of the Defendant School District.

76.     USD 353 administrators had actual knowledge prior to January of 2019 that Defendant Gray had trained her paraeducators to sit or bite children to control them, including Plaintiff Reed Saunders.

77.     Plaintiff P.J. Saunders had reported to Defendant Gray and other USD 353 employees in April of 2017 and the Summer and Fall of 2018 that she was

concerned about how Defendant Gray's subordinates physically treated Reed Saunders, including dragging him along by the walker.

78.     The outside agencies who reported her conduct included Futures Unlimited, who reported her conduct to the Department of Families and Children.

79.     Defendants Moore and Creamer were inadequately trained by Gray and by Gray's USD 353 administrators in the following ways;

a.     They were not properly trained on how to comply with the USD 353 written policies regarding student emergency safety interventions, restraints, physical interventions and punishments.

b.     They were not adequately trained regarding when and where it would be appropriate to punish, restrain, threaten or strike a student like Reed Saunders.

c.     They were not trained on how to document their emergency safety interventions, retrains, physical interventions and/or punishments.

d.     They were not trained on how to properly guide him while he was using his walker.

e.     They were not trained on how to properly leave him free to communicate using his hands.

f.     They were trained, on the other hand, to strike and threaten Reed Saunders and to use pain to control him.

g.     They were trained to seclude him from public sight.

h.     They were trained to pin his arms to his chair.

80.     The training they received from Defendant Gray was actually to harm, threaten and physically restrain Reed Saunders in ways that caused him appreciable physical pain, caused him physical injury, and violated his Fourth and Fourteenth Amendment rights.

81.     Prior to the January 2019 battery, USD 353 administrators and Defendant Gray knew that Defendants Creamer used inappropriate threats, physical restraints and physical pain to punish, control and supervise Reed Saunders.

82.     Prior to the January 2019 battery, Plaintiff P.J. Saunders had told Gray and administrators to stop Creamer and Moore from dragging Reed by his walker because of the potential damage that could be done to his spine.

83.     Prior to January 2019, USD 353 administrators knew that Defendant Gray was mismanaging paraeducators working beneath her and endorsing terrible methods of interacting with Reed Saunders, including pouring cold water on erections, biting him, sitting on him and using military-style pressure points; in addition, not managing her classroom in safe manner, as each of these concerns about Gray had been reported to the school district by Plaintiff P.J. Saunders or outside agencies to administrators.

84.     The military style pressure point tactics were substantially similar to Creamer's physical striking of Plaintiff Reed Saunders in that both actions involved the physical application of pain to Reed's body in order to control him.

85.     The Defendant District failed to engage in an interactive process with Reed Saunders by ignoring his mother's requests to for very reasonable

accommodations, such as : ending to the practice of dragging Reed by his walker, modifying the way Gray operated her classroom so that students were safe, and repeatedly asking for an end of all inhumane treatment of Reed, including biting him, sitting on him, pouring cold water on his erections, using military-style pressure points on him to control him with pain.

86.     The Defendant District denied these requests and continue to ratify Defendant Gray's supervision and training methods by not telling her to stop, not disciplining her or retraining her, and by actively rewarding her and providing positive employment reviews.

87.     Defendant Gray, Creamer and Moore deliberately discriminated against Reed Saunders on the basis of his multiple disabilities by engaging in the following conduct:

a.     In the case of Gray, ignoring Plaintiff P.J. Saunders repeated reports of inappropriate supervision of her son, personally engaging in the pouring of cold water on his erections, ratifying the use of military-style pressure points on him, endorsing biting and sitting on Reed as a form of control, and failing to intervene when Reed was being struck, threatened, restrained and dragged by his walker into a bathroom in January of 2019.

b.     In the case of Creamer, by committing batteries against Reed, threatening him physically, using pain on a routine basis to control his behavior, muzzling him by pinning his arms, dragging him by his walker knowing that such

activity could seriously hurt him, secluding him from a gym full of witnesses, and failing to stop Moore from pinning his arms and dragging him into a bathroom.

c.      In the case of Moore, dragging Reed into the bathroom knowing it could hurt him, restraining his arms, and failing to stop Creamer from striking Reed, threating him, restraining him, dragging him or secluding him.

88.    Defendant School District discriminated against Reed Saunders on the basis of his disabilities by continued to ratify and endorse Defendant Gray's methods for supervising Reed and for supervising and training the paraeducators who worked for her, including Moore and Creamer.

89.    Plaintiffs fully complied with all possible requirements of K.S.A. 12-105b(d), including sending a compliant demand letter and waiting the requisite time period prior to initiating a lawsuit.

90.    Defendant School District knew that Defendants Gray, Moore and Creamer presented a clear and specific danger to Plaintiff because:

a.      Plaintiff PJ Saunders had reported on numerous occasions to School District administrators that Gray was engaging in inhumane treatment of Reed Saunders, such as pouring cold water on his erections.

b.      Plaintiff PJ Saunders had reported on numerous occasions to School District administrators that Gray was training her subordinates to use inhumane methods of supervision, including biting and sitting on Reed Saunders.

c.      Plaintiff PJ Saunders had reported on numerous occasions to School District administrators that Gray had endorsed still more inhumane supervisory

methods, such as using pain to control Reed Saunders' behavior through use of military-style pressure points.

d.      School District administrators knew that Gray continued to train and supervise her subordinates to use inhumane and ineffective methods to supervise Reed Saunders.

e.      School District administrators knew that Gray continued to fail to train her subordinates to follow School District policies addressing use of force, such as documenting each instance.

f.      School District administrators knew that Gray and Moore and Creamer continued to drag Reed Saunders by the walker, knowing that such conduct could physically harm his spine.

91.     The Defendant School District's administration, including Mark Whitener, Heath Piney, Zachary Lawrence and the School Board, were on notice that Defendant Gray was not adequately supervising or training her paraeducators.

a.      School District administrators knew that Gray continued to train and supervise her subordinates to use inhumane and ineffective methods to supervise Reed Saunders.

b.      School District administrators knew that Gray continued to fail to train her subordinates to follow School District policies addressing use of force, such as documenting each instance.

c.      School District administrators knew that Gray and Moore and Creamer continued to drag Reed Saunders by the walker, knowing that such conduct could physically harm his spine.

92.     The Defendant School District's administration, including Mark Whitener, Heath Piney, Zachary Lawrence and the School Board, were on notice that Defendants Moore and Creamer had not been adequately trained.

93.     After Defendant Gray's performance was brought to the attention of the Defendant School District's school board, the School District's school board deliberately decided to retain Defendant Gray and reward and commend her, despite such knowledge of her identified training and despite knowledge that Reed Saunders and his peers would likely suffer constitutional deprivations as a result of Defendant Gray's training, methods and supervision, and despite at least one administrator recommending that she be terminated.

94.     Defendant Gray's affirmatively inhuman training, and Defendants Moore and Creamer's lack of appropriate training, made harm to Plaintiff Reed Saunders' federally protected rights substantially likely.

95.     Defendant Gray's training techniques and practices were widespread and long-standing and conducted in full knowledge of the School District's school board and administration, and therefore had the force and effect of an official school policy that deliberately discriminated against Plaintiff Reed Saunders on the basis of his disabilities.

96.     Specifically, the Defendant School District possessed a policy of

19

permitting its paraeducators to use pain, physical restraint and seclusion to control Reed Saunders, in a fashion that would never be warranted in any setting.

97.     The Defendant School District's policies and programs for special needs children therefore deliberately discriminated against him on the basis of his disabilities.

98.     At all times material, Plaintiff P.J. Saunders acted as Plaintiff Reed Saunders agent and on his behalf.

<u>COUNT I: SECTION 1983 - FAILURE TO TRAIN</u>
Asserted Against Defendant Brenda Gray and USD 353

99.     Plaintiffs hereby adopt and incorporate the previous allegations as if fully reinstated herein.

100.    Defendant District's employees Moore and Creamer exceeded constitutional limits on the use of force when they excessively and recklessly engaged mechanical restraint, physical restraint, physical escort and/or seclusion upon Plaintiff Reed Saunders.

101.    Defendant District's para-educators Moore and Creamer's conduct arose under circumstances that constitute a usual and recurring situation that para-educators face, including:

a.     interaction with children;

b.     challenging behavior with children;

c.     punishment and discipline of children;

d.     protecting children and keeping them safe on District property.

102.    Defendants District and Gray inadequately trained Defendant District's

20

para-educators Moore and Creamer on how to work with children with disabilities and how to engage in emergency safety interventions.

103.   This failure to train Defendant District's para-educators Moore and Creamer amounts to deliberate indifference to the Constitutional rights of Plaintiff to be free from bodily harm. It required specific training in a skill set needed to address recurring situations as described in preceding paragraphs, such as conflict between students and para-educators, presenting obvious, highly predictable, potential for constitutional deprivations.

104.   Defendants District and Gray were aware of a pattern of Moore and Creamer engaging in excessive and reckless emergency safety interventions – Defendant Gray had actively trained them to engage in such conduct.

105.   Defendants District and Gray had actual knowledge that para-educators Moore and Creamer had received no effective training to address these obvious, recurring situations with children in their care.

106.   Defendants District and Gray's indifference and resulting inaction was wanton, willful and with reckless disregard and neglect of Plaintiffs' rights, safety and well-being.

107.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered and continue to suffer from physical injuries, great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities and out-of-pocket costs, lost earning capacity, medical bills, and  pain

and suffering.

COUNT II: SECTION 1983 – SUBSTANTIVE DUE PROCESS
Asserted Against Defendants Moore and Creamer
(Fourth and Fourteenth Amendment)

108.   Plaintiffs hereby adopt and incorporate the previous allegations as if fully reinstated herein.

109.   Plaintiffs possessed rights under the Fourth and Fourteenth Amendments to be free of state intrusions into realms of personal privacy and bodily security through brutal means.

110.   Defendants Moore and Creamer, acting under color of law, were personally involved in violating Plaintiffs' Constitutional Rights in that they excessively engaged in emergency safety interventions, including physically restraining, pulling and striking Plaintiff Reed Saunders and secluding him in a bathroom – all conduct was not reasonably necessary to discipline or control Plaintiff Reed Saunders.

111.   Defendants Moore and Creamer deliberately decided to control Plaintiff Reed Saunders by inflicting appreciable physical pain.

112.   Defendants Moore and Creamer were motivated at least in part by actual malice against Plaintiff Reed Saunders.

113.   Defendants Moore and Creamer's emergency safety interventions were by no stretch reasonable or limited or within the limits of any common-law privilege.

114.   Defendants Moore and Creamer's emergency safety interventions on defenseless Plaintiff Reed Saunders were brutal, offensive to human dignity and

shocking to the conscience, and no post-ESI due process can absolve Defendants for their conduct.

115.    Defendants Moore and Creamer's use of force clearly violated established law, including the Tenth Circuit's discussion of the unconstitutionality of excessive corporal punishment in *Garcia By Garcia v. Miera*, 817 F.2d 650 (10th Cir. 1987).

116.    Defendants Moore and Creamer's use of force occurred the context of the monitoring, supervision and discipline of students in a District-sanctioned activity, and in the exercise of their customary practices.

117.    Defendants Moore and Creamer's use of force was deliberately indifferent to Plaintiffs' Constitutional rights, and was wanton, willful and with reckless disregard and neglect of Plaintiffs' safety and well-being.

118.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and continues to suffer from physical injuries, great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities and out-of-pocket costs, lost earning capacity, medical bills, and pain and suffering.

COUNT III: SECTION 1983 – DANGER CREATION
Asserted against Defendants Moore, Creamer and Gray

119.    Plaintiffs hereby adopt and incorporate the previous allegations as if fully reinstated herein.

120.    Defendant District's employees Moore, Creamer and Gray had a clear,

unquestionable duty to stop any excessive use of force in restraining, punishing or confining Plaintiff Reed Saunders, and to protect him.

121.   Defendants Moore, Creamer and Gray affirmatively acted to increase Plaintiffs' vulnerability to such excessive force by failing to stop Creamer or Moore.

122.   Plaintiff Reed Saunders was the member of a specific and limited group, in that he was the one student in the custody and care of Creamer, Moore and Gray and subjected to excessive use of force that day.

123.   The risk of the harm was known to Defendants.

124.   Defendants Moore, Creamer and Gray acted recklessly and in conscious disregard of that risk.

125.   Defendants Moore, Creamer and Gray's actions shock the conscience in that they were not justifiable and involved the misuse or abuse of their authority.

126.   Defendants Moore, Creamer and Gray put Plaintiffs at substantial risk of serious, immediate, and proximate harm, in that Plaintiffs were under immediate threat of physical assault from the FDJ.

127.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and continues to suffer from physical injuries, great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities and out-of-pocket costs, lost earning capacity, medical bills, and pain and suffering.

COUNT IV: SECTION 1983 – EQUAL PROTECTION
Asserted against Defendants Moore and Creamer

128.   Plaintiffs hereby adopt and incorporate the previous allegations as if fully reinstated herein.

129.   Defendants Moore and Creamer were acting under color of law.

130.   Plaintiff Reed Saunders was a "class of one" in that Defendants Moore and Creamer singled him out from other District students for use of excessive force and punishment.

131.   Defendants Moore and Creamer also singled out Plaintiff Reed Saunders for use of physical force because he was disabled.

132.   Defendants Moore and Creamer did not treat non-disabled USD 353 students in the fashion they treated Plaintiff Reed Saunders.

133.   There was no rational basis for Defendants Moore and Creamer single Plaintiff Reed Saunders out for use of excessive force and punishment.

134.   Defendants Moore and Creamer's conduct was deliberately indifferent to the Constitutional rights of Plaintiffs.

135.   Defendants Moore and Creamer's conduct was wanton and recklessly indifferent to Plaintiffs' rights and well-being.

136.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and continues to suffer from physical injuries, great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities and out-of-pocket costs, lost earning capacity, medical bills, and pain and suffering.

COUNT V: SECTION 1983 – SUPERVISORY LIABILITY
Asserted Against Defendant Gray

137.   Plaintiffs hereby adopt and incorporate the previous allegations as if fully reinstated herein.

138.   Defendant Gray was responsible for the direct supervision of Defendants Moore and Creamer.

139.   Defendant Gray was responsible for compliance with the policy and training requirements for para-educators under her supervision.

140.   Defendant Gray had actual knowledge of the threat posed by Defendants Moore and Creamer to Plaintiff Reed Saunders, and to the inadequacy of their training.

141.   Defendant Gray had actual knowledge that Reed Saunders was in the custody of Moore and Creamer the day of the excessive force.

142.   Defendant Gray had actual knowledge that Defendants Moore and Creamer had not been properly trained on emergency safety interventions, disciplinary approaches, punishments or working with children with disabilities.

143.   Defendant Gray deliberately failed to supervise Defendants Moore and Creamer prior to their use of excessive force by actively training them to engage in excessive use of force, and by failing to reprimand them, fire them, suspend them or direct them not to do it.

144.   Defendant Gray's deliberately indifferent choices set in motion a series of events that they reasonably should have known would cause others to deprive Plaintiff Reed Saunders of his Constitutional rights.

145.   As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered and continues to suffer from physical injuries, great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities and out-of-pocket costs, lost earning capacity, medical bills, and pain and suffering.

## COUNT VI: DISABILITY DISCRIMINATION
Asserted Against Defendant District

146.   Plaintiffs hereby adopt and incorporate the previous allegations as if fully reinstated herein.

147.   Plaintiff Reed Saunders has serious medical conditions that are disabilities as defined by the Rehabilitation Act of 1973 and the Americans with Disabilities Act, in that each of these conditions were physical or mental impairments that substantially limit Plaintiff in the major life activities of eating, walking, concentrating, communicating and thinking.

148.   Plaintiff is a disabled person within the meaning of the Rehabilitation Act and is a qualified person with a disability, in that, at all pertinent times, Plaintiff had physical or mental impairment that limits one or more major life activities, and that he was capable of performing the essential functions of his school programs with reasonable accommodation.

149.   At all pertinent times, Defendant was aware of Plaintiff's disabilities, his limits and needs and the effect they had on his academic abilities, performance and development.

150.   At all pertinent times, Defendant was aware that Plaintiff had requested accommodations for his disabilities.

151.   Defendant failed to engage in an interactive process and failed to provide reasonable accommodation.

152.   Defendant discriminated against Plaintiff because of his disability when its employees brutalized Plaintiff Reed Saunders because of his disability, thereby preventing him from participating in educational and athletic programs offered by Defendant.

153.   As a direct and proximate result of Defendant District's wrongful conduct, Plaintiffs have suffered continue to suffer from physical injuries, great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities and out-of-pocket costs, lost earning capacity, medical bills and pain and suffering.

### COUNT VII: KTCA – BATTERY/ASSAULT
Asserted Against Defendants District, Moore and Creamer

154.   Plaintiffs hereby adopt and incorporate the previous allegations as if fully reinstated herein.

155.   Defendants Moore and Creamer committed batteries against Plaintiff Reed Saunders when they employed excessive and reckless use of force in the form of emergency safety interventions upon his body.

156.   Defendants Moore and Creamer were both employed by Defendant District at the time of the batteries.

157.   Defendants Moore and Creamer were both present at a District program event and on the clock when they committed the batteries.

158.   Defendants Moore and Creamer both acknowledged that they were interacting in their capacities as District employees when they committed the batteries.

159.   Those batteries were within their scope of employment at the District.

160.   Defendant District employed Defendants Moore and Creamer to monitor the school environs, supervise children, address challenging behavior, keep kids safe, and use emergency safety interventions, and generally assist with the operation of the District mission, including physical intervention with students as needed.

161.   Defendants Moore and Creamer committed these batteries, at least in part, in the furtherance of the District's interests, which was to maintain school safety, discipline Plaintiff Reed Saunders, deter his challenging behavior, and maintain order and authority over students participating in District programs, physically intervening if necessary.

162.   Defendants Moore and Creamer had express and implied authority from USD 353 to engage in physical interventions with Plaintiff Reed Saunders, control his behavior, restrain him, seclude him and punish him.

163.   Defendants Moore and Creamer's conduct was reasonably foreseeable for Defendant District because the District requires para-educators to engage with children with disabilities and high-school age students with challenging behavior, discipline them, and physically intervene if needed.

164. There is no legal justification for the conduct of Defendants Moore and Creamer.

165. The District is responsible for Defendants Moore and Creamer's batteries under respondeat superior and the KTCA.

166. Defendants Moore and Creamer's conduct was grossly negligent, wanton, reckless and deliberately indifferent to the rights, safety and well-being of the Plaintiffs.

167. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered and continue to suffer physical injuries, great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities and out-of-pocket costs, lost earning capacity, medical bills, and pain and suffering.

### COUNT VIII: KTCA – NEGLIGENT SUPERVISION OF EMPLOYEES
Asserted Against Defendants District and Gray

168. Plaintiffs hereby adopt and incorporate the previous allegations as if fully reinstated herein.

169. Defendants District and Gray owed Plaintiff Reed Saunders a duty to control and supervise Defendants Gray, Moore, and Creamer.

170. Defendants District and Gray knew or should have known that Defendants Gray, Moore, and Creamer presented a clear and specific danger to Plaintiff, given their actual knowledge of Gray's propensity to engage in excessive and reckless emergency safety interventions, and her instruction to Moore and

Creamer to do the same.

171.   Defendants District and Gray had good reasons to believe that an undue risk of harm existed to Plaintiff as a result of the continued employment of Defendants Gray, Moore, and Creamer, given Defendants' actual knowledge of their dangerous propensity to harm students and track record of doing the same.

172.   The harms suffered by Plaintiff were squarely within the risk created by the known threat the District employees presented.

173.   Defendants' conduct was grossly negligent and/or committed with reckless indifference to the rights and safety of Plaintiff.

174.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and continue to suffer physical injuries, great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities and out-of-pocket costs, lost earning capacity, medical bills, and pain and suffering.

### COUNT IX: KTCA – NEGLIGENT SUPERVISION OF CHILDREN
Asserted Against Defendants District, Gray, Moore and Creamer

175.   Plaintiffs hereby adopt and incorporate the previous allegations as if fully reinstated herein.

176.   Defendants owed Plaintiffs a duty to supervise students in their custody in such a way as to keep the children safe.

177.   Defendants Moore and Creamer breached this duty when they used excessive force to restrain, seclude and control Plaintiff Reed Saunders.

178.    Defendants District and Gray breached the duty when they:

a.      Failed to adequately train Defendants Moore and Creamer;

b.      Failed to actively monitor the conduct of Defendants Moore and Creamer, especially around Plaintiff Reed Saunders;

c.      Failed to investigate and monitor Gray's performance in the supervision of children and employees;

d.      Failed to stop or even deter Defendants Moore and Creamer's actions upon Plaintiff Reed Saunders;

179.    Defendants' conduct was grossly negligent and/or committed with reckless indifference to the rights and safety of Plaintiffs.

180.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and continue to suffer physical injuries, great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities and out-of-pocket costs, lost earning capacity, medical bills, and pain and suffering.

## COUNT X: KTCA – FALSE IMPRISONMENT
Asserted Against Defendants District, Gray, Moore and Creamer

181.    Plaintiffs hereby adopt and incorporate the previous allegations as if fully reinstated herein.

182.    Defendants owed Plaintiffs a duty to supervise students in their custody in such a way as to keep the children safe.

183.    Defendants Moore and Creamer, in furtherance of their employer's

interest, physically restrained Plaintiff Reed Saunders against his will.

184.   Defendants had no legal cause to restrain Reed Saunders in the manner in which he was restrained.

185.   Defendant Gray countenanced and encouraged the false imprisonment of Reed Saunders.

186.   Defendants' conduct was grossly negligent and/or committed with reckless indifference to the rights and safety of Plaintiffs.

187.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and continue to suffer physical injuries, great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities and out-of-pocket costs, lost earning capacity, medical bills, and pain and suffering.

WHEREFORE, Plaintiffs pray for an award of actual damages against Defendants in an amount in excess of $75,000, for attorneys' fees together with interest and costs of suit, and for such and further legal and equitable relief as is deemed just and proper.

Respectfully submitted,


/s/Dan Curry
Dan Curry, KS #22750
Sarah Brown, KS #12130
BROWN & CURRY, LLC
406 W. 34th Street, Suite 810
Kansas City, MO 64111

(816) 756-5458, (816) 666-9596 (fax)
dan@brownandcurry.com
sarah@brownandcurry.com
ATTORNEYS FOR PLAINTIFF


## DEMAND FOR JURY TRIAL

Plaintiffs request trial by jury as to all triable issues.

Respectfully submitted,


/s/Dan Curry
Dan Curry, KS #22750
Sarah Brown, KS #12130
BROWN & CURRY, LLC
406 W. 34th Street, Suite 810
Kansas City, MO 64111
(816) 756-5458, (816) 666-9596 (fax)
dan@brownandcurry.com
sarah@brownandcurry.com
ATTORNEYS FOR PLAINTIFF

DESIGNATION OF PLACE OF TRIAL

Plaintiffs designate Kansas City, Kansas, as the place of trial.

Respectfully submitted,


/s/Dan Curry
Dan Curry, KS #22750
Sarah Brown, KS #12130
BROWN & CURRY, LLC
406 W. 34th Street, Suite 810
Kansas City, MO 64111
(816) 756-5458, (816) 666-9596 (fax)
dan@brownandcurry.com
sarah@brownandcurry.com
ATTORNEYS FOR PLAINTIFF